Here ye, here ye, here ye, this Honorable Appellate Court of the 2nd Judicial District is now back in session to conclude the hearing. The Honorable Robert E. Fletcher is presiding. Please be seated. Ms. Perko, you may proceed. Good morning, Your Honors and Counsel. May it please the Court. I represent Mr. DeBejar this morning on an appeal from a post-decree ruling that involved interpretation of the marital settlement agreement included in the judgment and its specific provision relating to disposition of the marital home. The post-decree judgment was entered approximately 24 years after the original judgment of dissolution of marriage. The petition underlying the post-decree matter was brought by the wife who sought credits upon sale of the marital residence, which credits were different than the provisions of Article VI regarding the marital home. The marital settlement agreement had provided that sale was to occur within about one and a half years of judgment on a date certain that the property was supposed to be listed and thereafter that there would be a 50-50 split of the proceeds. No timely sale occurred and the wife remained in possession of the premises for over 20 years. The trial court accepted the wife's argument that Article VI of the agreement was ambiguous. The court disregarded the formula for disposition of the proceeds provided in Article VI. Was it 20 years plus or just 19 and a half plus? Well, it was 24 years from the judgment and about 22 years from the date when the sale was supposed to occur and about 20 years from a conversation that we argue is instrumental in the disposition of this case. The reason I ask is because normally you can only enforce a judgment for 20 years and after that you can't enforce it unless you've filed a memorandum of judgment. Well, that's an interesting concept. I don't know that it's ever been applied in the area of marital agreements. I certainly have. Well, this is a contract dealing with real estate and I used to examine Chicago Title and Trust and so whenever you were dealing with a judgment, you always had to put the exception on about whether or not there was a memorandum, whether or not it was revived and so on and so forth and after 20 years, it's considered waivable. Well, that's an argument that wasn't raised in the trial court and I will frankly admit to your honors that it's not one that I considered in preparing this appeal. Speaking of arguments that were not made in the trial court, in the trial court you did not argue modification, correct? I'm not sure if that's accurate, your honor. What we did argue are substantially the same facts and theories. So she's using a different term? I believe that that's true because I believe that trial counsel's argument in the trial court clearly emphasized the fact that these parties had adhered to a practice regarding the payment of expenses for the residents that was consistent with the marital settlement agreement and that this course of conduct impliedly indicated their agreement. What if there was a modification? If there was a modification, by its own terms, didn't the wife's responsibility for the mortgage, insurance, etc. in the marital settlement agreement also expire on April 1st of 1993? Well, I think that it's... It has to be both, right? I think it's clear under the agreement that her responsibility for paying for the expenses of the property was tied to her possession. But according to the precise terms of the marriage settlement agreement said that her responsibility expired April 1, 1993. Well, what it actually said was that she had the absolute right to possession and that she would continue to pay these expenses. I think it's fair to say that the obligation to pay the expenses was tied to her period of possession and Article VI clearly limited her period of possession to this roughly one and a half year period. Article VI says, again, to my point, from the time of entry of judgment for dissolution of marriage until April 1, 1993, wife shall be responsible for all maintenance, taxes, insurance, and mortgage payments, etc. Correct. But I think that that is also read in context and the context is that her possessory right was only until April 1st, 1993. But doesn't our exchange here suggest that the term is ambiguous given the time frame that's gone by? Now it's 25 years. Well, correct. The argument of the wife is that the provision is ambiguous. However, the wife measures or suggests that ambiguity is to be determined from events that happened after the formation of the contract. And that simply is not the law. I mean, there are just vast precedents, perhaps most recently stated at length in the Supreme Court air safety case. And those cases make clear that a contract is to be tested within its four corners for a determination of ambiguity. So it's our position that there is no law whatsoever that would support a view that ambiguity is determined by events that occur after the formation of the contract. So, yes, it is clear that this contract limited her possessory right to April 1st, 1993, and that it tied payment for the house to that possessory right. But isn't that possessory right also expire April 1st, 1993? Correct. The possessory right... So if that is true, that everything in Article VI expired on April 1st of 1993, then in effect, everything that happened afterwards was really an agreement by the parties to modify the terms of the agreement. Correct. I mean, once the language is also mandatory in that section that the... But only prior to April 1st. Correct. And there's mandatory language that the property shall be listed for sale. Which they both disregarded. They both disregarded. So we would submit that you're then left with, when you hear the, before you've heard the evidence at trial, I mean, logically, you're left with two conclusions. I think there's been some breach of this contract, for instance, by somebody asking for a deed or asking for a listing or something of that nature, and the other party refusing to abide by the contract. That obviously would be a breach. Or you have a situation, or logically, you have a situation where the parties decided something else. And indeed, the extrinsic evidence in this case shows that the parties decided something else. The trial court, in its fact-finding capacity, based on evidence that it heard that we're not contesting on this appeal, determined that the parties made a subsequent, had a subsequent conversation. And in this subsequent conversation, agreed that the white could remain in possession. The court further found, and again, the testimony substantiates this, that there was absolutely no discussion at that time about finances. Where does the statute of frauds come in? This is real estate. Was this new agreement in writing subscribed to by both parties? It was not. So how could it be within the statute of frauds to actually result in a modification? Well, I'm not sure that the statute of frauds will address a possessory right of this nature that does not affect title. I mean... Go ahead. I don't want to stop you. Finish, please. No, I don't have anything more to say about that. Okay, because I was going to ask you another question, which was... Please. If the statute of frauds, in some way, shape, or form, is being suspended or disregarded, and the gist of this cause of action is specific performance, because I believe the wife asked for a quitclaim deed, which, in a roundabout way, is a petition for specific performance, as opposed to merely selling the house and then giving him the money or the proceeds that she thinks he's due. So if specific performance is required, then you're seeking the equitable jurisdiction of the trial court. And in the process, he who wants equity must do equity. So you've got a situation where the trial court, in order to grant specific performance, is supposed to decide all these issues based upon chancery. Well, that analysis may be correct. But I will point out to Your Honor that the first pleading filed by the wife was consistent with Your Honor's analysis of specific performance, in that it did ask for the quitclaim deed. But the second pleading filed by the wife was a petition for declaratory judgment. And as I recall that petition, it is not asking for a deed, but rather asking for credits upon sale. And that is indeed what happened. Was the second seeking declaratory judgment, was that based upon modification, which was oral, or was it based upon the original document that was in writing? What really I understand it to be an equitable request for these credits because the wife does allege that there was a conversation, and that in this conversation, there was an agreement that she could maintain possession of the premises. And it was the husband's, according to the testimony, it was the husband's suggestion that the children, the girls, continue to live in the home. He thought that would be the best for the girls, correct? Correct. But I don't think that the testimony is completely clear that- What's good for the girls isn't necessarily what's good for his pocketbook? Well, I mean, there wasn't any discussion of either of their pocketbooks. And I mean, if there were, I think we wouldn't be on appeal at this time. And that gets down to the bottom line question of whether when they disregarded the time for a listing for sale, whether they also then chose for some reason to throw out the formula for the financial aspects of their arrangement. Well, they obviously didn't because she continued to pay everything and never made a demand on him, and he never made an offer. Even though he was an obligor on a note and a mortgage, he never made any attempt to help pay for anything, correct? Correct. And I mean, that gets down to the argument on appeal, and we believe that we've cited ample precedent. Now, aside from the statute of frauds problem that Justice McLaren raises, but aside from their problem, we have cited ample precedent that establishes that written agreements may be modified by subsequent oral agreement and that they can be modified as to a single term or certain terms. Well, they may be modified if there's partial performance or complete performance, but when was the youngest child emancipated, 18 years old? Well, the testimony was I believe that the youngest child was 2 years old at the time of the judgment, which would have been 1991. So if the child was born around 1990. So 16 years later, she would be 18? Correct. And was the agreement that when she was 18 or was it when she was 21? Well, I mean, the agreement was not, according to the testimony, the agreement was not that specific, nor does the testimony indicate that the agreement was necessarily tied to the children still being in their minority or still being resident in the home. The testimony, as I understood it, was simply to the effect that the issue of the wife remaining in the house came up. The agreement was that it would be good for her to stay in the house for the children and that that was the end of the conversation. And then thereafter, 20 years of practice continues with the wife paying these expenses and remaining in exclusive possession of the home. So the request now by the wife is that there are equitable theories that support this. We've addressed that in the brief, unless there are any questions. My time is up. Just two quick points. The DM that you cite in the brief, that was an arbitration clause issue, correct? It was an arbitration clause. And on the other case, you said courier. I think that's a typo. It's inmate marriage or carrier. Okay. In that case, the case you cited for the modification issue. Correct. There was a June 2008 judgment, a rule of show clause. But the evidence in the record showed that the husband had testified at the prove up that market fluctuation would not affect the amount, correct? I don't recall that specific piece of testimony. I do know that that case- There was nothing here by either the husband or the wife to suggest that the market value or changes would not affect the sale of the home. No. It's just the agreement itself, correct? Correct. And, I mean, I would point out to the court that we don't even know the market. I mean, we know what credits the wife is getting. We don't even know what the market. I mean, this record doesn't even reflect what the market value is. It doesn't reflect what the bottom line result is. Of the things I remember, I do not remember that. I bet you the market value has gone up and they're both going to make a profit. Well, you know, that may or may not be true. Truly, the record doesn't reflect that. I mean, I have, in preparing for this argument, thought about the assumptions that probably underlay the marital settlement agreement and the disposition in this case. For a judgment that was made in 1991, some 15 years or more before there was a massive market crash. So, you know, as a member of a firm that does a tremendous amount of real estate, not myself. But, I mean, generally speaking, I think we don't know what has happened to specific properties, you know, post, let's say, 2007 or so. Well, if this had gone for sale in 1993, he would have gotten 50% of whatever the house was worth then. Correct. And some quantity of funds. Correct. Which he could have done whatever he chose to do with. Correct. And, you know, there's a discussion in the briefs about, you know, the advantage issue. Because advantage, meaning unfair advantage, is a theory that underlies the equitable remedy, certainly of constructive trust. And that underlies the cause of action for unjust enrichment. Now, truly, in this case, and, I mean, this is one of our arguments as to why equitable relief is inappropriate in this case, we couldn't even really say that Mr. DeBager has an advantage. Because while we may assume that he's going to make some profit, that each of them are going to get something out of the sale of this home, it is not something that a court can know and upon which a fact can be made on this record. We don't know that. We don't know that Mr. DeBager is keeping an advantage. We know that. We just don't know. I mean, I think we have to assume that there would be profits from the home. In 1993. Yes, and probably at the present time, because the testimony is that the home is paid up. So presumably it has some value. But as to, you know, presumably it has some value. But whether it has a value in excess of the credits that were given by the trial court to the wife is something we do not know. You say in your brief that the burden on review is a question of law, the interpretation of the contract, and therefore it's a no vote. But didn't the trial court find that there was an ambiguity, which other than our interpretation of whether or not there is or isn't an ambiguity, if there was an ambiguity, then it's manifest way and or an abuse of discretion when it comes to the satisfaction and discharge of the equity between the parties? Well, assuming that the court had some basis for finding an unjust enrichment, but however, that was never pleaded and there's absolutely no evidence. No, that is my point. My point is that your argument seems to be that the contract is clear and unambiguous. And therefore, it's the noble review. And if your premise is false, then your conclusion is false. And if your premise is false, and that is that there is an ambiguity and that the contract is ambiguous and not clear and unambiguous, then what is the standard of review? Well. Don't we then get into, or didn't the trial court then get into questions of fact, which then at minimum makes it a manifest way issue? Well, my understanding of the law is that if there are findings of fact that are undisputed, then again, the court is faced with a question of law. There was really only one operative fact that the trial court made in this case and that I could really envision coming out of that hearing, and that fact was that a conversation occurred. I suppose there are additional facts, most of which were in by stipulation to the tune of the wife having made all of these payments and to the title not having been changed over the years. I mean, those. Well, you say these contractual provisions were not canceled, revoked, or modified by the party's subsequent agreement to extend the time for performance. Well, if they weren't, then either the contract is ambiguous or it's not, and if it is ambiguous, then doesn't the standard of review change? Even if it's an undisputed fact, when you argue that the facts, the undisputed facts did not cancel, revoke, or modify? Well, I think that that is the legal conclusion that these, I think the undisputed facts lead to the legal conclusion that there wasn't a cancellation or a modification. I'm not so sure what sentence you're reading out of my brief, but I mean, I do think that it's a legal conclusion that a contract is not modified nor canceled nor revoked. I mean, we might use that legal conclusion to describe a factual situation as well, but I do think that ultimately that's the legal conclusion. Any other questions? You'll have an opportunity to make rebuttals. Thank you. Thank you, Your Honor. Mr. Johnson. Good morning, Your Honor. May it please the court, counsel. Your Honor, I want to clear up a few points if I can. I hope so. My client did file a request for equitable relief, did not specify what it was exactly. It was a petition for a declaration of rights. But in the prayer for relief, it was a general prayer for relief. And I have to take the position that when trial counsel for Mr. DeBejar argued this matter to the trial court, one of the alternatives that counsel suggested was the court could fashion an equitable remedy. And I think that's exactly what the court did here. That was argued by trial counsel on the report of proceedings, record pages 41, 44, and 45. If it's an equitable remedy, then it's an abuse of discretion. The real question or the benchmark seems to be, was the trial court authorized to exercise chancellery powers? I believe it was, Your Honor, because as it's pretty clear based upon the original agreement and the judgment, after April 1st, 1993, the apparent obligations and rights of both of these parties terminated. Well, I don't know that they terminated so much as they weren't described in the agreement that was set up. Which caused an ambiguity because they weren't described. And that's the bedrock position. I mean, did the contract say that at the end of 93, everybody's rights will disappear, be abrogated and dissolved, and they will go away and forget that they ever knew each other? Not in those terms, Your Honor. Didn't your client waive any of her rights here by never asking for additional monies for the property? Didn't she just go along with, okay, I get to keep possession and I have to pay for everything? I mean, that would be, that was the agreement prior to 93. April 1 comes and goes. Nobody puts the house up for sale. And they continue under that agreement. In effect. They continued under something. I don't know exactly what they continued doing. Well, what did they do for 20 years? She lived there and she paid all the money. Absolutely. And Mr. contributed nothing. Right. And so whether or not we tie that back into an agreement of which both parties' rights respectively mutually terminated as of April 1, 1993, I'm not sure that that's necessarily an appropriate answer either. And that's why I think that there was a good basis here for the trial court to fashion an equitable remedy based upon what, in fact, did happen over those 22 odd years after April 1 of 1993. I guess where's the agreement for the husband here to pay part of her living expenses? Where does that agreement come from? There was no agreement concerning that whatsoever except for the fact that he was still liable on the note on the property. Obviously, that was never enforced either. Both of these parties were in a position where neither of them were enforcing anything against the other one. Well, it's correct. My client lived in the property, paid all the expenses, did all the maintenance on the property, made sure it never went into fault, and ultimately paid off the mortgage completely. It just seemed, based upon what the trial judge did here, the trial judge certainly did find that there was an ambiguity as far as what was to happen after April 1, 1993. And I think that the trial judge, based upon the facts that were presented to him, did what was appropriate. What was the house worth in 1993? Pardon me, Your Honor? What was the house worth in 1993? Your Honor, I do not know. Do you recall what the assessed valuation was in 1993? I do not know, Your Honor. I can tell the court, though, that the house was in East Undeal, Illinois. And it still is. Does that mean it's better than Winston? I don't know. No, it's... But that's where the house is. The actual factual evidence, other than what was stipulated to by the parties or testified to, was... Respectfully, it was pretty thin. Well, at least the appellant forewent or postponed the realization of any share in the equity of the house, did he not? That's true. Okay, so that's one benefit that he gave up. Is there any other that you can think of, that you want to think of? Well, he didn't come in and file a petition for a rule and say, You're in contempt because you won't list this house for sale. Other than that, and neither did she. Other than that, I... Would it make any difference if this was two years after 93, like 95, instead of 20 or 24 years or whatever? Well, I don't... It might from the standpoint of Your Honor's earlier comments about basically statute of repose on judgments and whether or not you revive judgments. Certainly within two years, it wouldn't have had to be revived. But there's... Based on the fact that there was a, like I say... What specifically did the trial court determine was the ambiguity? What was to occur here after April 1, 1993, when both of these... And 20-some odd years later, when both of these parties simply weren't running... Because if he had come in on April 2nd, I think you might be pretty clear what might have happened, correct? Yes, sir. There would have been an almost immediate, probably, order to list this property for sale. So does latches or slumbering on one's rights come into effect here or not? How about an estoppel of some sort? Was any of this argued in the trial court below? Estoppel was not argued. What about latches? Latches was not argued. It was simply a general prayer for equitable relief that was presented by the appellee in the trial court. She wants to sell the house and move on with her life. The kids are grown. And they've been out of the home for a significant period of time. It's time to resolve it. And the husband apparently did not want to sell because she had to ask the court to file a quick clean deed. Obviously, he denied the request for relief. Absolutely. So you asked for more than what you got. Pardon me, Your Honor? Did you get what you asked for in the sense that the equitable solution was less than a quick clean deed? Your Honor, I think that the equitable solution that the court arrived at is certainly appropriate. And if this court would see fit under Supreme Court Rule 366 to direct that a quick clean deed be issued, I certainly wouldn't argue against it. If she asked for a deed from him, for him to sign over her rights so she could sell the house, well, what was the consideration offered for that? Isn't that what we're about here? I'm guessing if she'd offered him 50% of what the house is worth today, no credits, he'd have said okay. Because that's basically what he's asking for now. Well, I would assume so. But, of course, she also requested credits for her- Right, so basically that's what she asked for. She didn't just simply ask for a deed based on this old agreement. That's correct. And even if this conversation took place, it was until the children were, the youngest was of majority age or moved out of the house, was no longer in the house. Wouldn't that be 2006, give or take? I don't do math much better than either of you. So where did the credits come from after 2006? Even that would have been ten years ago. That's my point. Where did the credits come for that time beyond- Beyond the child? Yeah, beyond the would-be agreement. Well, certainly paying real estate taxes, and I don't know exactly- But again, the husband here is relying on the agreement, which is you get possession, but you pay for all the costs, and we split the difference later. I'm not sure that, if we're trying to figure out what the agreement was after April 1st of 1993- Well, you take the April date out of that agreement. It's crystal clear. I agree. And then both parties chose to ignore the agreement. I agree, Your Honor. I don't dispute that. So your position is the husband is entitled to nothing at all other than 50% of what's left after all the credits. He's not entitled to interest on the money he could have and would have received in 1993? No, because I think he was- I think what the trial judge- First of all, what I think what the trial judge here did, I think he did correctly. And we're asking the court, obviously, to affirm. But I do believe that my client is entitled to her credits, and if the result of that is she receives her credits plus half of the- What was her last tax bill, do you know? Pardon me, Your Honor? What was her last tax bill? I'm not- I don't know. I don't know, Your Honor. Property taxes were $48,000. Let's round it up to $50,000 for 15 and 7 or 18 years. 18 goes into 50 three times, roughly. So she was paying $3,000 a year in taxes. I think that's fair. So we're- Well, I'm just speculating. No, but I think for that area- Well, let's assume that the house was going to sell now for $300,000 and there was $105,000 in credit. That means there's $195,000 left over divided by 2 and your client gets 90- or gets the- I should say Ms. Perko's husband client gets $95,000. If that's how the numbers shook out after the credits, I guess that would be what would have to happen. In fact, I believe that's what the trial judge did here. He said the proceeds would be split. Was there ever a comment as to what the people thought the value of the house was now? No, Your Honor. Okay. Any other questions? Did the bell ring? No, sir. It didn't? Okay. You can continue, sir. I'm sorry. That's all I have except to say, Your Honor, I don't believe that in any way, shape, or form any equitable relief was waived due to the fact that there was a request for general equitable relief. And that would be our position. Respectfully, Your Honors, and thank you very much. I do have one follow-up question. Was there ever any agreement between the parties to make major upgrades or changes to the property? There were no specific agreements in this record at all, except that my client certainly did make them. And it was stipulated, as part of the stipulation, as to what those improvements or maintenance issues cost her. Right. But my question is, was there an agreement? No specific agreement at all. Okay. In the credit, the credit did not include the bathroom renovation or anything, did it? It's whatever the trial judge determined on the basis of his orders, Your Honor. Certainly, that was the argument I know that the opposing counsel made during the trial. It shouldn't include these things, but I think the trial court certainly assessed what the credit sought to be in this final order. Respectfully, we ask that the court affirm the judgment below. Thank you. Thank you. Ms. Berko? Your Honor, with reference to the wife's position that there was a request for general equitable relief, generally speaking, the Illinois Marriage and Dissolution of Marriage Act controls proceedings for dissolution of marriage. And it is not a statute that affords a remedy for general equitable relief. Indeed, the case law that we cited in our brief, regarding the law that surrounds interpretation and enforcement of marital settlement agreements, makes clear that those agreements should be enforced as a matter of law and that they are not susceptible to redetermination and rewriting on some sort of general equitable principles. So on that basis alone, the request for general equitable relief should be rejected. And furthermore, I would submit that the concept of general equitable relief does not simply afloat in the atmosphere. Averted omnipresence in the sky. Well, it's connected. I mean, general equitable relief or equitable relief is granted when there is a recognizable theory for such equitable relief. And the theory that has been suggested by the wife in this case is a theory of unjust enrichment and a remedy of constructive trust. As I alluded to in my opening argument, both unjust enrichment and constructive trust demand a finding that there has been a species of misconduct and unfairness by the party who would be found to have profited and been unjustly enriched. The courts use language for unjust enrichment as a benefit that violates justice, equity, and good conscience. The last time I ruled in your favor, I was reversed by the Supreme Court. Is that true? St. James. Okay. I thought you ruled in my favor more recently in a probate case. Oh, really? Okay. I was thinking of... Never mind. I do recall St. James, but I was thinking of a more recent case that is still pounding in from the Supreme Court. I vaguely remember a probate case that you were involved in. Okay. Thank you, Your Honor. So I hope that any history that I have, and I'm sure it would not affect Your Honor with reference to Mr. DeBasier's case today. But the bottom line here is that there is not a conduct by Mr. DeBasier in terms of getting 50% of the existing equity in this property that somehow offends common sense or good conscience. And we've cited a couple of marital cases in our brief. In Ray, the marriage of Crook from the Supreme Court, and the Dudek case. And, I mean, the Dudek case teaches that it wouldn't be uncommon to attach the expenses for property to possession of the property. And the Crook case teaches that you don't necessarily get reimbursed when you have had use of the property. So given that history in dissolution cases, there could never be a finding of unjust enrichment in this case. And as for the remedy of constructive trust, that applies to profit from fiduciary relationships or some fraud. Well, Mr. DeBasier, in terms of his 50% interest in this property or his joint tenancy interest in this property, that is not an advantage that he gained by some misconduct. Well, it's not misconduct. It was his idea. And then he doesn't pay any of the principal on the mortgage. He doesn't give her a dime for taxes, a dime for home improvements. But it's his idea that the children remain in the home with her. Well, actually, Your Honor, I... That was the trial court's finding. No, I respectfully, I would take issue with the conclusion that that was the trial court's finding. Well, I think it's fair to say that there was a discussion and that Mr. DeBasier believed that it would be appropriate for her to stay. I don't think it can be interpreted that any conversation that was testified to can be interpreted as a demand that she stay. No, no, no. I'm not suggesting that. But the court said the conversation, I believe the conversation took place. And the reason I believe the conversation took place is, again, of the inaction of the parties. Mr. DeBasier didn't do anything to try to collect any of the money. He now says he's due to him. So that tells me that the conversation did take place and he was happy with the kids living there. And that's all fine and admirable. Correct. I think that that part of it is true. He was happy for that situation to continue. Did he say at the same time that I... He was ignoring the specific requirements of the marriage settlement agreement, but now he's asking that the marriage settlement agreement be enforced as written with respect to the distribution of the proceeds. Correct. Both parties ignored it. Both parties ignored it because they formed a new agreement as to their possessory issue. Actually, what both parties ignored was the date. Correct. They ignored the date. That's our position, that they ignored one thing. We have an entire section in our brief where we talk about failures to, in other cases, failures to abide by time requirements in a contract and to continue the date for performance. It's our position this is nothing more than a continuation of delay for the time of performance. It's not a termination of rights. It's not a termination of the entire Article VI of the MSA. It is just a delay in performance and the formula for performance is in the MSA. So for these reasons, we ask for reversal of the trial court. Thank you. Thank you, Your Honor.